UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

RAVEN GRIFFIN,

        Plaintiff,

                                          Case No. 19-cv-1070-pp

  v.

EDUARDO GARCIA, ANDREW FARINA,
CITY OF MILWAUKEE, IRENE PARTHUM,
FIFTH DISTRICT POLICE STATION, ABC INSURANCE COMPANY,
and STATE OF WISCONSIN DISTRICT ATTORNEYS OFFICE,

        Defendants.

---

**ORDER GRANTING PLAINTIFF'S AMENDED MOTION TO PROCEED
WITHOUT PREPAYING FILING FEE (DKT. NO. 5) AND SCREENING
COMPLAINT**

---

The plaintiff has filed nine cases in the Eastern District of Wisconsin in the last seven years.[1] Five of those cases, including this one, challenge some aspect of the plaintiff's July 7, 2016 arrest and subsequent prosecution for one count of robbery with use of force, which concluded on July 25, 2018 with a jury verdict of not guilty. Dkt. No. 1. See State v. Griffin, Milwaukee County Circuit Court Case No. 16CF003074 (https://wcca.wicourts.gov).

In 2017, the plaintiff filed two cases related to the criminal prosecution, beginning with a petition for writ of *habeas corpus*. Griffin v. Parthaum, Case No. 17-cv-338. Judge Adelman dismissed the petition for lack of diligence. Id.,

---

[1]See Griffin v. Parthaum, *et al.*, Case No. 17-cv-338; Griffin v. Wisconsin Supreme Court, Case No. 17-cv-648; Griffin v. Milwaukee County Courthouse *et al.*, Case No. 18-cv-631; Griffin v. Curzen and Schmeil, Case No. 18-cv-1099; Griffin v. Commissioner of Social Security, Case No. 21-cv-63; Griffin v. Liggins, Case No. 21-cv-666); Griffin v. Milwaukee County Circuit Court, Case No. 21-cv-834; Griffin v. Mattek, Case No. 22-cv-1174.

1

Dkt. No. 22. The plaintiff also filed a petition for writ of *mandamus*, which Judge Adelman dismissed after concluding that the writ of *mandamus* was not the appropriate mechanism to obtain the relief she wanted. <u>Griffin v. Wisconsin Supreme Court</u>, Case No. 17-cv-648, Dkt. No. 7.

The next year, the plaintiff filed two more cases related to the criminal prosecution. The first was a civil rights case. <u>Griffin v. Milwaukee County Courthouse, *et al.*</u>, Case No. 18-cv-631. On June 11, 2018, Judge Stadtmueller dismissed the case with prejudice under the <u>Younger</u> abstention doctrine because the state criminal case remained pending at the time the plaintiff filed the federal lawsuit. <u>Id.</u>, Dkt. No. 20. The second was another *habeas* petition. <u>Griffin v. Curzen and Schmeil</u>, Case No. 18-cv-1099. This court dismissed the *habeas* petition as premature when the plaintiff filed it, because she had filed the petition while her criminal prosecution remained pending, and as moot when the court screened it, because by that time she no longer was under any restriction that could be defined as "custody" for *habeas* purposes. <u>Id.</u>, Dkt. No. 4 at 7.

The plaintiff filed this case on July 25, 2019, a year after her July 25, 2018 acquittal. <u>See</u> <u>Griffin</u>, Case No. 16CF003074 (Milwaukee County Circuit Court). Along with the complaint, the plaintiff filed a motion to proceed without prepaying the filing fee. Dkt. No. 2. The court ordered the plaintiff to file an amended motion for leave without prepaying the filing fee because of inconsistencies in her various filings. Dkt. No. 4. The plaintiff subsequently filed that amended motion. Dkt. No. 5. This order resolves the amended motion for leave to proceed without prepaying the filing fee and screens the plaintiff's complaint.

## I.     Plaintiff's Ability to Pay the Filing Fee

A plaintiff who does not have the money to pay the federal civil filing fee "may commence a civil action without prepaying fees or paying certain expenses." Coleman v. Tollefson, 575 U.S. 532, 534 (2015). To allow a plaintiff to proceed without prepaying the filing fee, the court first must decide whether the plaintiff can pay the fee; if not, it must determine whether the lawsuit is frivolous, malicious, or fails to state a claim upon which relief can be granted. 28 U.S.C. §§1915(a), 1915(e)(2)(B)(i). To qualify to proceed without prepaying the filing fee, a plaintiff must fully disclose their financial condition truthfully under penalty of perjury. See 28 U.S.C. §1915(a)(1) (requiring the person seeking to proceed without prepayment to submit "an affidavit that includes a statement of all assets [they] possess[]").

In the amended request to proceed without prepaying the fee, the plaintiff states that she is not employed. Dkt. No. 5 at 1. The plaintiff says she has received $794 in Social Security in the twelve months prior to the date she filed the request. Id. at 2. The plaintiff lists total monthly expenses of $794. Id. at 3. According to the request, the plaintiff does not own a car or a home and she has no cash on hand or money in a checking or savings account. Id. Based on the information in the request, the court concludes that the plaintiff does not have the ability to pay the filing fee.

The plaintiff still is responsible for paying the filing fee over time. See Rosas v. Roman Catholic Archdiocese of Chi., 748 F. App'x 64, 65 (7th Cir. 2019) ("Under 28 U.S.C. § 1915(a), a district court may allow a litigant to proceed 'without *prepayment* of fees,' but not without ever paying fees.") (emphasis in original)). When a court grants a motion allowing a person to

3

proceed without prepaying the filing fee, it means only that the person does not have to pay the full filing fee up front; the person still owes the filing fee.

## II. Screening Standard

The court next must decide whether the plaintiff has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). To state a claim under the federal notice pleading system, a plaintiff must provide a "short and plain statement of the claim" showing that she is entitled to relief. Federal Rule of Civil Procedure 8(a)(2). A plaintiff does not need to plead every fact supporting her claims; she needs only to give the defendants fair notice of the claim and the grounds upon which it rests. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). The complaint must contain allegations that "'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth. Id. at 663-64. Because the plaintiff is representing herself, the court must liberally construe the allegations of her complaint. Erickson v. Pardus, 551 U.S. 89, 94 (2007).

## III. Facts Alleged in the Complaint

The complaint names three individual defendants—Eduardo Garcia, Andrew Farina and Irene Parthum. Dkt. No. 1 at 1. The plaintiff also has sued

4

the City of Milwaukee, the "Fifth District Police Station," ABC Insurance Company and "State of Wisconsin District Attorney[']s Office." Id.

The plaintiff alleges that on July 7, 2016, she called 911 "continuously" about her landlord's parents who were the agents for the landlord's property. Id. at 2. According to the plaintiff, she had "just" rented the place and had been there only about a week when the landlord's parents entered her "place without consent." Id. The plaintiff alleges that the landlord's parents were "trespassing" and "refusing to leave." Id. The dispatch allegedly told the plaintiff that it was "civil" and that they could not "illegally and selfhelp evict" the plaintiff. Id. The plaintiff alleges that she was pregnant and "attacked by the woman and her husband when [she told them [she] was recording them." Id.

The plaintiff alleges that "[a]fter [being] attacked with [her] hair tore from [her] hair and kneed and stratch," she drove to the Fifth District police station. Id. at 2-3. She says that, upon arriving, PO Stephen Cook (a desk sergeant) told the plaintiff that PO Eduardo Garcia said to place the plaintiff under arrest. Id. at 3. The plaintiff says that she asked "for what," saying that she "came here to report [her] attack" and asking why she was being arrested; she says she stated that she wanted a lawyer. Id. Cook allegedly told her that she had to wait until Garcia arrived, took her to the back of the station "on a hard bench" and cuffed her to the bench. Id. The plaintiff says that she told Cook that she was "leaking fluids," "pregnant cramping" and needed medical attention. Id. She says that Cook again told her that she had to wait for Garcia and that there was nothing Cook could do. Id. The plaintiff alleges that Garcia and "Muller"[2] arrived, and the plaintiff asked for a lawyer; she says that "he"

_____

[2] The complaint does not explain who "Muller" is or how Muller was involved in the events described in the complaint.

began to say "you mess up your going to be charged with 2 counts of battery, 1 counts of Robbery and 1 count of disorderly conduct." Id. at 3-4. "He" allegedly told the plaintiff "how the daughter" had ties within the police department; the plaintiff does not explain who "the daughter" was. Id. at 4. The plaintiff claims that after thirty to forty-five minutes of insulting her, "he" got her medical attention "where at the hosiptal [sic] he refused to leave out the room and [the plaintiff] was already handcuff to the bed." Id.

According to the plaintiff, she miscarried the same day, was taken to the Milwaukee County Jail and was detained for four days. Id. She asserts that all charges were dropped on July 12, 2016,[3] but that she "was still force to come in and face one count of Robbery even though they were dropped." Id. The plaintiff says that police reports were intentionally tampered with "after [she] in 2018 requested documents and open background checks;" she says the documents were changed to say that "a call was about a robbery when in fact one officer at Preliminary hearing testified they were only dispatched over a landlord tenant dispute and something about a fight." Id. The plaintiff alleges that there was no evidence and there were no witnesses, but that she still was bound over for trial. Id. She claims that she challenged jurisdiction at every court proceeding, but that Irene Parthum (the prosecutor) and the court "proceeded to go on with a case outside of their jurisdiction, Therefore are liable to suit." Id. She alleges that Parthum and Andrew Farina[4] tampered with her photo array because no one selected the plaintiff's photo as the person who

---

[3] The publicly available docket shows no activity on July 12, 2016 and there is no indication that the charges were dropped. State v. Griffin, Milwaukee County Case No. 2016CF003074, available at https://wcca.wicourts.gov.

[4] The plaintiff does not say who Andrew Farina was or how Farina was involved in the events described in the complaint.

committed a crime. Id. The plaintiff also claims that CDs "that say placed in inventory" were destroyed and that body cameras were destroyed and not compelled. Id.

The plaintiff says that she fought "a case that ended on" July 25, 2018 "w[h]ere at a jury trial [she] was found not guilty." Id. at 5. She says that she is suing for false imprisonment, emotional and mental distress and abuse, "violating [her] rights," discrimination and malicious prosecution. Id. The plaintiff accuses Parthum of intentionally placing multiple false convictions on the plaintiff's "background record;" she alleges that "when you run [her] social security number that [she is] a convicted felon with at least 3 other false charges preventing [her] from credit, housing, and jobs." Id. The plaintiff also asserts that City of Milwaukee employees arrested her and imprisoned her without any authority to do so. Id. Finally, the plaintiff claims that she has videos of unnamed officers driving the plaintiff's car without her permission in their private garage. Id.

Under "Relief Wanted," the plaintiff requests damages for violations of the Fourteenth Amendment, false arrest, false imprisonment and malicious prosecution under federal and state law. Id. at 6. She requests damages for losing her unborn child. Id. The plaintiff requests damages for the defendants intentionally withholding and destroying exculpatory evidence, intentionally tampering with a photo array and police records, assisting in "falsifying a false charge" with no probable cause, acting without jurisdiction, taking away the plaintiff's right to represent herself and for violating the plaintiff's Fifth Amendment rights. Id. at 6-7.

## IV. Analysis

### A. Governing Law

The plaintiff marked the box on the form complaint next to "I am suing for a violation of federal law under 28 U.S.C. § 1331." Dkt. No. 1 at 6. She alleges that her Fourteenth Amendment rights have been violated, and asserts that she is suing for false arrest, false imprisonment and malicious prosecution "under federal law . . . ." Id. at 6.

Section 1983 of Title 42 allows a plaintiff to sue a "person" who, acting under color of state law, deprives the plaintiff of "any rights, privileges, or immunities secured by the Constitution and laws." To state a §1983 claim, the plaintiff must allege that (1) someone deprived her of a right secured by the Constitution or laws of the United States and (2) the person who deprived her of that right was acting under color of state law. Buchanan-Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citation omitted); see also Collins v. Alevizos, 404 F. App'x 58, 60 (7th Cir. 2010) ("Action is taken under color of state law only when it is made possible because the actor is clothed with the authority of state law."). Under §1983, "a public employee's liability is premised on her own knowledge and actions, and therefore requires evidence that each defendant, through her own actions, violated the Constitution." Aguilar v. Gaston-Camara, 861 F.3d 626, 630 (7th Cir. 2017) (citing Burks v. Raemisch, 555 F.3d 592, 594 (7th Cir. 2009)).

Some of the plaintiff's claims are state-law claims, and she alleges that she also is suing under state law. Dkt. No. 1 at 6. If a federal court has original jurisdiction over some of a plaintiff's claims, it has "supplemental jurisdiction" over state claims "that are so related to claims in the action within such

8

original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. §1367(a).

B.  Eduardo Garcia

The plaintiff alleges that Officer Cook told her that Officer Garcia told Cook to place the plaintiff under arrest. She alleges that Cook cuffed her to a bench, and that when she told Cook that she was pregnant, "leaking," cramping and in need of medical assistance, Cook said he could do nothing until Garcia arrived. The plaintiff asserts that when Garcia and someone named "Muller" arrived and she asked for a lawyer, "he" told her that if she messed up she would be charged with various crimes. She asserts that "he" told her that "the daughter" had ties to the police. The plaintiff says that "he" insulted her for thirty to forty-five minutes, then "finally" got her medical attention. And she asserts that "he" refused to leave the hospital room, even though she was handcuffed to the bed.

1.  *False Arrest*

The plaintiff says that she is suing for false arrest. Dkt. No. 1 at 6. "To prevail on a false-arrest claim under §1983, a plaintiff must show that there was no probable cause for [her] arrest." Neita v. City of Chicago, 830 F.3d 494, 497 (7th Cir. 2016); see also Abbott v. Sangamon Cnty., Ill., 705 F.3d 706, 714 (7th Cir. 2013) ("The existence of probable cause to arrest is an absolute defense to any § 1983 claim against a police officer for false arrest or false imprisonment."). Probable cause to arrest exists "when the facts and circumstances that are known to [the officer] reasonably support a belief that the individual has committed, is committing, or is about to commit a crime." Holmes v. Vill. of Hoffman Estates, 511 F.3d 673, 679 (7th Cir. 2007). Probable cause is a "common-sense inquiry requiring only a probability of criminal

9

activity;" it exists "whenever an officer . . . has enough information to warrant a prudent person to believe criminal conduct has occurred." Leaver v. Shortess, 844 F.3d 665, 669 (7th Cir. 2016) (quoting Whitlock v. Brown, 596 F.3d 406, 411 (7th Cir. 2010)). "Probable cause does not require certainty. It is a 'fluid concept that relies on the common-sense judgment of the officers based on the totality of the circumstances.'" Hart v. Mannina, 798 F.3d 578, 587 (7th Cir. 2015) (quoting United States v. Reed, 443 F.3d 600, 603 (7th Cir. 2006)). It is an objective inquiry based on "what the officer knew at the time of the arrest" and "viewed from the standpoint of an objectively reasonable police officer." Abbott, 705 F.3d at 714 (quotation omitted). The standard also "inherently allows room for reasonable mistakes." Id.

The plaintiff alleges that she was arrested for no reason, which amounts to being arrested without probable cause. It is not clear, however, whether the plaintiff is alleging that *Garcia* falsely arrested her. She alleges that Cook told the plaintiff that Garcia ordered her to be arrested, but she alleges that it was *Cook* who took her to the back of the police station and cuffed her to a bench. Dkt. No. 1 at 3. The plaintiff says that she had to wait, and then that "Garcia and another officer arrived Muller . . . ." Id. She says that when she asked for a lawyer, "he" started telling her what would happen if she messed up, but she doesn't say whether the "he" was Garcia or Muller (or even Cook). She says that "he" began telling her that "the daughter" had ties with the police department, but again does not say whether "he" was Garcia, Muller or Cook. She says "he" insulted her for thirty to forty-five minutes, but does not say whether "he" was Garcia, Muller or Cook. And she says that "he" finally got her medical attention, but then would not leave the hospital, again without clarifying whether "he" refers to Garcia, Muller or Cook.

10

That said, the plaintiff did not name Cook or Muller as defendants. The only named defendant mentioned in the plaintiff's description of the arrest process is Garcia. While the allegations are very vague, construing the complaint liberally, the court will allow the plaintiff to proceed against Garcia on a claim of false arrest.

### 2. *False Imprisonment*

The plaintiff also sues for false imprisonment. Dkt. No. 1 at 6. "For purposes of a § 1983 claim, false imprisonment means detention without legal process." Birkley v. Nitz, Case No. 23-cv-110-pp, 2023 WL 7627993, at *1 (E.D. Wis. Nov. 14, 2023) (citing Cibulka v. City of Madison, 448 F. Supp. 3d 1001, 1023 (W.D. Wis. 2020)). "Under Wisconsin state law, '[f]alse imprisonment is the unlawful and intentional restraint by one person of the physical liberty of another.'" Id. (quoting Buchanan v. Weaver, Case No. 12-cv-408, 2013 WL 12180997, at *4 (W.D. Wis. Dec. 23, 2013)).

Again, the plaintiff has alleged that she was detained at the police station for no reason. She also says that she was cuffed to a bed in the hospital and that after getting medical attention, she was taken to the jail and held there for four days. As the court already has noted, it appears—but is not clear—that the plaintiff is alleging that Garcia was the person who caused her to be detained at the police station. The plaintiff does not allege how long she was detained at the police station (other than alleging that someone insulted her for thirty or forty-five minutes) or how long she was detained at the hospital. But at this early stage, for the reasons the court stated regarding the false arrest claim, the court will allow the plaintiff to proceed on a false imprisonment claim against Garcia for holding her at the police station and at the hospital.

11

The court will not allow the plaintiff to proceed against Garcia for detaining her at the jail. She does not allege that Garcia took her to the jail or explain who ordered her to be held there.

### 3. *Insults to the Plaintiff*

The plaintiff alleges that after Garcia and Muller arrived, "he" began to tell the plaintiff what would happen to her if she messed up, and "he" insulted her for thirty to forty-five minutes.

The Seventh Circuit has long held that "[s]tanding alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest[,] or deny a prisoner equal protection of the law." DeWalt v. Carter, 224 F.3d 607, 613 (7th Cir. 2000). Verbal harassment typically triggers no constitutional protections at all. Id. For this reason, the Seventh Circuit has upheld the dismissal at screening of §1983 claims arising from verbal harassment, racially derogatory remarks, sexually explicit statements, and threats of physical violence. See, *e.g.*, Jones v. Butler, 663 F. App'x 468, 470 (7th Cir. 2016) (affirming dismissal of complaint based on vague allegations of feeling unsafe with guards); DeWalt, 224 F.3d at 613 (7th Cir. 2000) (affirming dismissal of verbal harassment claim because "racially derogatory language, while unprofessional and deplorable, does not violate the Constitution."). Only on rare occasions does verbal harassment of a pretrial detainee or incarcerated person rise to the level of a constitutional violation. See Beal v. Foster, 803 F.3d 356, 357–59 (7th Cir. 2015) (reversing dismissal of Eighth Amendment claim where incarcerated person alleged that officer's actions and comments in front of other incarcerated persons implied that incarcerated person was homosexual, which increased his risk of sexual assaults by other incarcerated persons and caused him severe psychological

12

harm); <u>Lisle v. Welborn</u>, 933 F.3d 705, 717–18 (7th Cir. 2019) (reversing summary judgment for nurse because her alleged statements "taunt[ing] and encourag[ing] an inmate known to be suicidal and in the midst of a mental health crisis to take his own life" went beyond "simple verbal harassment").

Assuming (again, without a clear allegation) that Garcia is the "he" whom the plaintiff alleges insulted her, the plaintiff has not alleged sufficient facts to support a claim against him. The complaint states only that "[a]fter 30 to 45 minutes of insulting me he finally got me medical intention [sic] . . . ." Dkt. No. 1 at 4. The plaintiff does not describe the insults, does not explain who else was present when she was insulted and does not allege that the insults resulted in a deprivation of any constitutionally protected right.

The court will not allow the plaintiff to proceed against Garcia on a claim that he insulted the plaintiff.

### 4. *Deliberate Indifference to Serious Medical Need*

The plaintiff alleges that after he handcuffed her to a bench in the back of the police station, she told Cook that she was "leaking fluids," "pregnant cramping" and needed medical attention. Dkt. No. 1 at 3. Cook allegedly responded by saying that the plaintiff "had to wait for Garcia" and that "there [was] nothing he could do." <u>Id.</u> After Garcia arrived, "he" allegedly insulted the plaintiff for "30 to 45 minutes" before "finally" getting the plaintiff medical attention. <u>Id.</u> at 4. The plaintiff claims that at the hospital, "he" refused to leave the room" despite the plaintiff being "handcuff[ed] to the bed." <u>Id.</u> The plaintiff alleges that she miscarried the same day, "losing [her] unborn child." <u>Id.</u>

"The Eighth Amendment protects prisoners from deliberate indifference to a serious injury or medical need." <u>Chapman v. Keltner</u>, 241 F.3d 842, 845 (7th Cir. 2001) (citing <u>Zentmyer v. Kendall County</u>, 220 F.3d 805, 810 (7th Cir.

2000)). "This protection is extended to arrested persons and pretrial detainees under the Due Process Clause of the Fourteenth Amendment." Id. "To prevail the detainee must satisfy an objective and a subjective element, namely that: (1) an objectively serious injury or medical need was deprived; and (2) the official knew that the risk of injury was substantial but nevertheless failed to take reasonable measures to prevent it." Id. (citation omitted). To satisfy the subjective element, "[n]either negligence nor even gross negligence is a sufficient basis for liability; rather, liability attaches only if the conduct is intentional or criminally reckless." Id. "Deliberate indifference can arise by a failure to provide prompt treatment for serious medical needs or by intentionally interfering with treatment once prescribed." Id. at 845-46 (citing Estelle v. Gamble, 429 U.S. 97, 104-105 (1976)).

The court assumes for the purposes of screening that pregnancy— particularly a pregnancy in which the pregnant person is leaking fluids, cramping and asking for medical attention—is an objectively serious medical need. It is less clear that the complaint alleges the subjective element. The plaintiff says that she told *Cook* that she was pregnant, was leaking fluids, was cramping and needed medical attention. The plaintiff says that Cook told her she'd have to wait for Garcia and that there was nothing he could do. The plaintiff's allegations appear to demonstrate that she put *Cook* on notice that there was a substantial risk of injury to the plaintiff, but she has not sued Cook.

By the plaintiff's own admission, *Garcia* was not present when she told Cook that she was leaking fluids, cramping and in need of medical attention. She says that Garcia later "arrived," but does not allege that she told *Garcia* anything about leaking fluids or cramping. She says that after thirty or forty-

14

five minutes, "he" got her medical attention, but she does not say who "he" was. She alleges that "he" would not leave the hospital room, and that she miscarried that same day.

Without an allegation that *Garcia* knew that the plaintiff was leaking fluids, cramping and asking for medical attention, the court cannot find that the plaintiff has stated a deliberate indifference claim against Garcia. As the court has noted, negligence or even gross negligence is not enough to state a constitutional claim of deliberate indifference—even if Garcia noticed that something was amiss with the plaintiff, that is not enough to state a claim for deliberate indifference. For the plaintiff to proceed against Garcia, the plaintiff must allege that Garcia knew that she faced a substantial risk of injury but failed to take reasonable measures to prevent it. The plaintiff has not made such allegations. The court will not allow the plaintiff to proceed on a deliberate indifference claim against Garcia.

C.    Andrew Farina

The plaintiff has not alleged sufficient facts to state a claim against Farina. The plaintiff mentioned Farina in a single sentence in her complaint. Dkt. No. 1. That single sentence says, "Andrew Farina, Irene Parthum tampered with my photo array as no one picked my picture as a person who committed a crime." Id. at 4. The plaintiff has not explained what Farina's role was in the incidents she describes in the complaint. She does not explain whether Farina was another prosecutor, a police officer or a witness. Section 1983 allows a plaintiff to proceed only against officials acting under color of state law; the court cannot determine whether Farina was acting "under color of law" when he allegedly "tampered" with the photo array because the plaintiff has not explained who Farina is.

15

Even if the plaintiff had alleged that Farina was a prosecutor or a police officer, the plaintiff has not alleged sufficient facts to state a due process claim. The Seventh Circuit has held that "a police officer who manufactures false evidence against a criminal defendant violates due process if that evidence is later used to deprive the defendant of her liberty in some way." Whitlock v. Brueggemann, 682 F.3d 567, 580 (7th Cir. 2012). The same is true for a "prosecutor who manufactures evidence when acting in an investigatory role." Id. But "[n]ot every act of evidence fabrication offends one's due process rights . . . ." Saunders-El v. Rohde, 778 F.3d 556, 560 (7th Cir. 2015). As the Whitlock court said, an official who fabricates or manufactures evidence violates due process only when the evidence is used to deprive the defendant of a liberty interest. Although the public docket does not corroborate her allegation, the plaintiff says that the charges were dropped, but that she still had to "come in and face one count of robbery." Dkt. No. 1 at 4. "[T]he burden of appearing in court and attending trial, in and of itself, is not a deprivation of liberty." Alexander v. McKinney, 692 F.3d 553, 557 n.2 (7th Cir. 2012). The plaintiff has not asserted that the alleged tampering with the photo array (or any of the other evidence tampering she alleged, such as destroying CDs or body cameras) resulted in a deprivation of her liberty—in fact, she was released from custody after her arrest, she says that no one selected her photo from the allegedly tampered-with photo array and was acquitted at trial.

The court will dismiss Andrew Farina as a defendant because the plaintiff has not stated any cognizable claims against him or alleged that he was acting under color of state law.

16

D.    Irene Parthum

On page 5 of the complaint, the plaintiff identifies Irene Parthum as "the prosecutor." Dkt. No. 1 at 5. The plaintiff alleges that Parthum "and the court proceeded to go on with a case outside of their jurisdiction." Id. at 4. She alleges that Parthum, along with Farina, "tampered with [her] photo array as no one picked [her] picture as a person who committed a crime." Id. She alleges that Parthum "has intentionally placed on [her] background record when you run [the plaintiff's] social security number that [she is] a convicted felon with at least 3 other false charges preventing [her] from credit, housing, and jobs." Id. at 5.

"Prosecutors are absolutely immune from liability for damages under § 1983 for conduct that is functionally prosecutorial; this immunity is understood to broadly cover all conduct associated with the judicial phase of the criminal process." Bianchi v. McQueen, 818 F.3d 309, 316 (7th Cir. 2016). Courts apply a functional test to determine whether a prosecutor is entitled that absolute immunity. See Fields v. Wharrie, 672 F.3d 505, 511 (7th Cir. 2012) (citing Buckley v. Fitzsimmons, 509 U.S. 259, 269 (1993)). "The question is whether the prosecutor was acting as an advocate in the challenged actions or was instead acting in some other capacity, such as investigator or administrator." Greenpoint Tactical Income Fund LLC v. Pettigrew, 38 F.4th 555, 565 (7th Cir. 2022). A prosecutor acts as an advocate when she performs "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial." Buckley, 509 U.S. at 273. In contrast, a prosecutor acts in an investigative capacity when she performs the role of a detective or officer "searching for the clues and corroboration that might give [her] probable cause to recommend that a suspect be arrested." Id. For actions that are not

17

prosecutorial, prosecutors are entitled only to the qualified immunity granted to other officials who share those duties. Fields, 672 F.3d at 511 (citations omitted).

The plaintiff's first allegation—that Parthum (and the court) prosecuted her despite not having jurisdiction—sounds like a malicious prosecution claim, and the plaintiff includes "malicious prosecution" in the laundry list of claims in the complaint. (Dkt. No. 1 at 6) Such a claim is "litigable as a constitutional claim only if there were no adequate state tort remedy, but Wisconsin law provides such a remedy." Cannon v. Newport, 850 F.3d 303, 306 (7th Cir. 2017) (citations omitted). In Wisconsin, malicious prosecution is a tort (a personal injury cause of action). Monroe v. Chase, 961 N.W.2d 50, 50 (Wis. 2021). So—the plaintiff may not proceed against Parthum under §1983 for the *constitutional* violation of malicious prosecution.

As the court has observed, it can exercise supplemental jurisdiction over state-law claims if those claims are part of the same case or controversy. The plaintiff's malicious prosecution claim against Parthum is part of her allegations that she was wrongfully arrested and prosecuted. So the question is whether the plaintiff has alleged sufficient facts to state a state-law malicious prosecution claim against Parthum.

A malicious-prosecution plaintiff must prove each of the following six elements:

1. There must have been a prior institution or continuation of judicial proceedings against the plaintiff;

2. Such former proceedings must have been by, or at the instance of the defendant;

3. The former proceedings must have terminated in favor of the plaintiff;

18

4. There must have been malice in instituting the former proceedings;

5. There must have been want of probable cause for the institution of the former proceedings; and

6. There must have been injury or damage resulting to the plaintiff from the former proceedings.

Id., 961 N.W.2d at 53.

The plaintiff has alleged that there was a prior institution of judicial proceedings—the criminal prosecution. She has not clearly alleged that Parthum instituted those proceedings, but she implies as much. She alleges that she was acquitted, which means the proceedings were terminated in her favor. She alleges that that she was prosecuted for no reason, which—again—is like an allegation that she was prosecuted without probable case. It is less clear whether the plaintiff has alleged that Parthum had "malice" in instituting the prosecution, and less clear that the plaintiff was "injured or damaged" by the prosecution.

But even if the court assumes that the plaintiff has adequately alleged a malicious prosecution claim, the plaintiff's allegation that Parthum "proceeded to go on with a case" that allegedly was outside of Parthum's "jurisdiction"[5] involves fundamentally prosecutorial conduct. That means that Parthum

---

[5] The plaintiff's reference to Parthum "and the court" proceeding against her in a case "outside of their jurisdiction" confuses judicial immunity with prosecutorial immunity. "A judge does not enjoy immunity if he or she is acting in the 'clear absence of all jurisdiction'[.]" Kowalski v. Boliker, 893 F.3d 987, 997 (7th Cir. 2018) (quoting Stump v. Sparkman, 435 U.S. 349, 357 (1978)). But the plaintiff has not alleged that Parthum is a judge—she has alleged that Parthum is a prosecutor. There is no exception to *prosecutorial* immunity for acting in the absence of jurisdiction. And the plaintiff has not named a judge as a defendant.

19

enjoys absolutely immunity from the plaintiff's allegation that Parthum "proceeded" with a prosecution.

The plaintiff next claims that Parthum tampered with the photo array. The court already has explained, when discussing this same allegation against Farina, that the plaintiff has not alleged the elements of a due process claim because she has not alleged a deprivation of liberty resulting from the alleged tampering. Even if Parthum had some involvement with the photo array in an investigative capacity, the plaintiff has not alleged a due process violation, and if Parthum had involvement with the photo array during the prosecution itself, she likely is immune from suit.

Finally, the plaintiff alleges that Parthum "placed . . . 3 other false charges" on the plaintiff's "background record." The plaintiff has provided no details about this claim—she asserts only that if one "runs" her Social Security number, something shows that she is a convicted felon with three false charges. The public docket belies this allegation; the Wisconsin Circuit Court Access Program reflects two criminal cases against the plaintiff: State v. Griffin, Case No. 2016CF003074 (Milwaukee County Circuit Court), which shows that the jury returned a verdict of not guilty on July 25, 2018; and State v. Griffin, 2020CM002462 (Milwaukee County Circuit Court), which shows that a misdemeanor charge of criminal damage to property was dismissed on June 15, 2023 (long after the plaintiff filed this case). https://wcca.wicourts.gov. The plaintiff has not provided case numbers, filing dates or any other details related to these allegedly false convictions, or explained how Parthum allegedly managed to "place" convictions in some database accessible by running someone's Social Security number. This is exactly the kind of conclusory

20

allegation that is not entitled to a presumption of truth. The court will dismiss Irene Parthum as a defendant.

      E.    The City of Milwaukee

The complaint names the City of Milwaukee, a municipality, in the caption of the complaint. Dkt. No. 1 at 1. The complaint, however, makes no allegations against the city. The only mention of the city in the body of the complaint is the plaintiff's assertion that "[t]he City of Milwaukee employees arrested [her], imprison[ed] [her] and had no rights or authority to do so." Id. at 5. As vague as it is, that allegation is an allegation against *individual employees* of the City of Milwaukee, not the city itself.

Even if the plaintiff had made allegations against the city itself, she has not stated facts sufficient to support a claim. As the court explained earlier, §1983 allows a plaintiff to sue "persons" who, acting under color of state law, violate the plaintiff's constitutional rights. A municipality may be considered a "person" under §1983 and may be held liable for its own violations of the federal Constitution and laws. Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 690-91 (1978). But "a municipality can be liable under § 1983 only 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'" Spiegel v. McClintic, 916 F.3d 611, 617 (7th Cir. 2019) (quotation marks omitted) (quoting Monell, 436 U.S. at 694). Put another way, for a city to be held liable under §1983, the unconstitutional activity must "implement[] or execute[] a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers," or must constitute a "custom" of the governmental entity. Monell, 426 U.S. at 690-91. The Seventh Circuit has recognized three types of

municipal action that can support municipal liability under §1983: "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." Spiegel, 916 F.3d at 617 (quotation marks omitted). And a municipality cannot be held vicariously liable for the torts of its employees or agents. J.K.J. v. Polk County, 960 F.3d 367, 377 (7th Cir. 2020) ("Time and again the Supreme Court has reinforced the strict prohibition against allowing principles of vicarious liability to establish municipal liability under § 1983.").

The plaintiff has not stated any claim, and certainly not a §1983 claim, against the City of Milwaukee. The complaint focuses on the mistreatment the plaintiff alleges she suffered when she was arrested on July 7, 2016 and subsequently prosecuted. Dkt. No. 1 at 2-7. The plaintiff has not asserted that the alleged mistreatment was the result of an "express policy" or a "widespread practice," or that any of the people who allegedly mistreated her had "final policymaking authority." See Spiegel, 916 F.3d at 617. The plaintiff alleges that the "City of Milwaukee *employees* arrested [her], imprison[ed] [her] and had no rights or authority to do so." Dkt. No. 1 at 5. Again, that is a claim against the *individual* city employees (like Garcia), not a Monell "custom, policy or practice" claim against the City. The court will dismiss the City of Milwaukee.

F.    The State of Wisconsin District Attorney[']s Office and the Fifth District Police Station

The caption of the complaint lists the State of Wisconsin District Attorney[']s Office and the Fifth District Police Station as defendants. Dkt. No. 1 at 1. Other than saying that the events she described involving Officers Cook, Garcia and "Muller" occurred at the Fifth District Police Station, the complaint

22

makes no allegations against that defendant. Nor does the complaint make any allegations against the district attorney's office (which is an arm of the *county*, not the state of Wisconsin). There are two major problems with these entities being listed as defendants.

Even if the plaintiff had made specific complaints against the Fifth District Police Station and the Milwaukee County District Attorney's Office, police stations (or police departments) and district attorney's offices are not considered "person[s]" under §1983. See Cunningham v. Kenosha County, Case No. 23-cv-291-pp, 2023 WL 4976167, at *6–7 (E.D. Wis. Aug. 3, 2023) (noting that the Kenosha County District Attorney's Office and the Kenosha Police Department are not "person[s]" under §1983).

Under Wisconsin law, a district attorney's office and a police department are not suable entities. Defendants in a federal lawsuit must have the legal capacity to be sued, and the "law of the state where the court is located" determines that capacity for entities that are not individuals or corporations. Fed. R. Civ. P. 17(b); see also DeGenova v. Sheriff of DuPage Cnty., 209 F.3d 973, 976 n.2 (7th Cir. 2000) ("The federal courts look to state law to determine if a defendant is amenable to suit."). Under Wisconsin law, neither a district attorney's office nor a police department has the capacity to be sued. See Cunningham, 2023 WL 4976167, at *6 (explaining that Wisconsin law "allows [district attorneys] to bring civil cases only under certain, specific state statutes" and that "[i]t does not give district attorneys broad authority to sue or be sued, and thus an entity characterized as the 'office of the district attorney' or as the 'district attorney' does not have the authority to sue or be sued" (citing Wis. Stats. §978.05) (quotation omitted)); Hobbs v. Shesky, Case No. 22-cv-492-pp, 2022 WL 16752064, at *8 (E.D. Wis. Nov. 7, 2022) (stating that a

police department "is 'not a legal entity separable from the [city] government which it serves,' and therefore is not subject to suit under §1983" (quoting Whiting v. Marathon Cnty. Sheriff's Dep't, 382 F.3d 700, 704 (7th Cir. 2004)). Because the complaint makes no specific allegations against the "State of Wisconsin District Attorney[']s Office" and the "Fifth District Police Station," because they are not "person[s]" under §1983 and because they are not suable entities under Wisconsin law, the court will dismiss them as defendants.

G.    ABC Insurance Company

The plaintiff has named ABC Insurance Company as a defendant, but the body of the complaint makes no allegations against ABC Insurance Company. The court suspects that the plaintiff used a placeholder name—"ABC Insurance Company"—because she does not know the name of the insurance company that insures the City of Milwaukee or the police department or Milwaukee County, and she wants to make sure that if she wins, she can collect any damages from whoever indemnifies the defendants. But those are the court's suspicions—the complaint contains no such allegations. Even though the plaintiff is representing herself, and even though the court must liberally construe the allegations in a self-represented person's complaint, the plaintiff's complaint still must provide "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order 'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Twombly, 550 U.S. at 555 (quoting Conley, 355 U.S. at 47). Because the complaint contains no allegations against any insurance company, and does not explain why ABC Insurance Company is named as a defendant, it does not give ABC Insurance Company—or the companies that may insure the

24

defendants—that fair notice. Because the complaint does not state a claim against ABC Insurance Company, the court will dismiss it as a defendant.[6]

## H.    Miscellaneous Claims

Finally, the complaint mentions several causes of action without providing specific facts or naming specific defendants who allegedly committed the violations giving rise to the causes of action.

The plaintiff says that she miscarried the day of the events at the police station, but she does not explain what caused the miscarriage and does not allege that any of the defendants were responsible for that miscarriage. The court's heart goes out to the plaintiff for such a terrible loss, but without any allegations that a particular state official caused the miscarriage, or any explanation of how that official caused the miscarriage, the plaintiff has no claim in federal court based on that loss.

The plaintiff says that police reports were tampered with after she asked for documents in 2018, but she does not say who tampered with them or why. She says that she was bound over for trial despite there being no evidence or witnesses, but does not allege who was responsible for binding her over for trial. She alleges that CDs were destroyed that someone said had been placed in inventory, and that body cameras were destroyed and "not compelled." But she does not say who destroyed these items, how the destruction of the items harmed her or who should have compelled what.

The plaintiff says that she has suffered "slander," but does not say who committed slander against her or how. She says that she has video of "officers"

_____

[6] The court also questions whether it is necessary for a plaintiff in a §1983 case to name an insurance company as a defendant to assure that someone will indemnify any state actors against whom damages are awarded. But the court need not resolve that issue here.

driving her car into their private garage without her permission but does not say when this occurred or who the officers were or how this injured her.

The plaintiff asks for damages for "intentionally withholding and destroying exculpatory evidence," and she mentions "Brady"—presumably Brady v. Maryland, 373 U.S. 83, 87 (1963), the United States Supreme Court case holding that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment"—but she does not identify the person or persons who withheld or destroyed the allegedly exculpatory evidence or explain how the evidence was exculpatory. (The plaintiff was acquitted, so the alleged withholding of exculpatory evidence did not result in her conviction.)

The plaintiff seeks damages for "taking away Plaintiff right to represent herself and forcing a lawyer for months," dkt. no. 1 at 7, and she mentions "Faretta"—likely Faretta v. California, 422 U.S. 806 (1975), which held that a criminal defendant has a constitutional right to defend herself. But the plaintiff does not say who took away her right to represent herself, who forced her to have a lawyer, whether she asked to represent herself or how being forced to have a lawyer harmed her.

Finally, the plaintiff says she seeks damages for "Double jeporady [sic] violating the Plaintiff Fifth Amendment to the U.S. Constitution." Dkt. No. 1 at 7. The Fifth Amendment to the U.S. Constitution says that no person may be "subject for the same offense to be twice put in jeopardy of life or limb." The plaintiff has alleged that charges were dropped, but then she had to go to trial. Even if the public docket confirmed that the state had dropped the charges against the plaintiff at some point (and it does not) and then pursued them later, it is not clear whether that violates double jeopardy. See United States v.

26

<u>Faulkner</u>, 793 F.3d 752, 758 (7th Cir. 2015) (noting a split in the circuits). And the plaintiff has not alleged whether the charges were dismissed with or without prejudice and has not alleged who forced her to go to trial on charges that had been dismissed, or how that happened.

To state a claim, a complaint must provide the "who, what, when, where and how" for each alleged claim. She must identify the person who harmed her, what that person did to harm her, when the person did it, where the person did it and how she was harmed. It is not enough for a plaintiff to say, "my rights were violated" or "I was slandered;" if the plaintiff does not say *who* violated her rights, *what they did* to violate her rights, *when* they did it, *where* they did it and *how* her rights were violated, she has not stated a plausible claim.

The court will not allow the plaintiff to proceed on these miscellaneous allegations.

**V.  Conclusion**

The court **GRANTS** the plaintiff's amended motion for leave to proceed without prepaying the filing fee. Dkt. No. 5.

The court **DISMISSES** defendants Andrew Farina, Irene Parthum, the City of Milwaukee, the State of Wisconsin District Attorney[']s Office, the Fifth District Police Station and ABC Insurance Company.

The court **ALLOWS** the plaintiff to proceed on claims of false arrest and false imprisonment against defendant Garcia and will require defendant Garcia to respond to those allegations only.

The court **ORDERS** the U.S. Marshals Service to serve a copy of the complaint and this order on defendant Eduardo Garcia under Federal Rule of Civil Procedure 4. Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. §1921(a). Although Congress

27

requires the court to order service by the U.S. Marshals Service, it has not made any provision for either the court or the U.S. Marshals Service to waive these fees. The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§0.114(a)(2), (a)(3). The U.S. Marshals Service will give the plaintiff information on how to remit payment. The court is not involved in collection of the fee.

The court **ORDERS** defendant Eduardo Garcia to file a responsive pleading to the complaint.

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

The court advises the plaintiff that if she fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on her failure to diligently pursue it. The parties must notify the clerk of court of any change of address. It is the plaintiff's responsibility to notify the court if she changes addresses; if she does not keep the court advised of her address the court may dismiss this case without further notice.

Dated in Milwaukee, Wisconsin this 12th day of March, 2024.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**