UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

RAVEN GRIFFIN,

        Plaintiff,

    v.                                Case No. 19-cv-1070-pp

EDUARDO GARCIA,

        Defendant.

---

**ORDER GRANTING DEFENDANT'S MOTION TO COMPEL (DKT. NO. 37), DENYING PLAINTIFF'S MOTION FOR PROTECTIVE ORDER (DKT. NO. 41), DENYING PLAINTIFF'S MOTION TO QUASH SUBPOENA (DKT. NO. 44) AND GRANTING DEFENDANT'S MOTION TO EXTEND DISCOVERY DEADLINES (DKT. NO. 48)**

---

This order addresses four discovery motions: (1) the defendant's motion to compel the production of the plaintiff's medical information, dkt. no. 37; (2) the plaintiff's motion for a protective order to prevent the production of her medical information, dkt. no. 41; (3) the plaintiff's motion to quash a subpoena the defendant issued to the Milwaukee County District Attorney's Office seeking records related to the plaintiff's state court criminal case, dkt. no. 44; and (4) the defendant's motion to extend the discovery and dispositive motion deadlines, dkt. no. 48. The order also sets new deadlines for the remaining discovery period.

## I.    Background

On July 25, 2019, the plaintiff—representing herself—filed a complaint alleging, among other things, claims of false arrest and false imprisonment arising out of a July 2016 arrest by the Milwaukee Police Department. Dkt. No.

1

1. The court screened the complaint and allowed the plaintiff to proceed only on her false arrest and false imprisonment claims against police officer Eduardo Garcia. Dkt. No. 6 at 27. On April 26, 2024, the defendant filed a motion to dismiss the complaint, dkt. no. 12, which the court granted, dkt. no. 21. The court permitted the plaintiff to file an amended complaint. Id. at 8-10.

On June 2, 2025, the plaintiff filed an amended complaint. Dkt. No. 22. In the amended complaint, she alleges that her landlord's parents attacked her during an attempted eviction. Id. at 3. The plaintiff, who was pregnant at the time, alleges that she drove to the police station to press charges over the incident, but instead was told by the desk officer that she was to be placed under arrest. Id. The plaintiff alleges that the desk officer took her into the back of the police station and handcuffed her to a bench despite her request for medical attention. Id. at 4. The plaintiff alleges that when the defendant arrived, she again requested medical attention, but the defendant denied it for thirty to forty-five minutes. Id. She alleges that the defendant chastised her and threatened her with charges for battery, robbery and disorderly conduct. Id.

The plaintiff asserts that when she was taken to the hospital, the defendant refused to leave the room during her examination until the nurse requested he do so. Id. The plaintiff states that she suffered a miscarriage and subsequently was taken to the Milwaukee County Jail and imprisoned for four days, allegedly without a warrant. Id. She alleges that the charges against her were dropped except for one count of robbery. Id. at 5. The plaintiff asserts that the defendant illegally searched her residence and vehicle without a warrant. Id. She contends that she was arrested without probable cause and was detained for more than forty-eight hours before she was arraigned, which she

2

asserts is a violation of the Fourth Amendment. Id. She also alleges that the defendant "ignored exculpatory evidence and misled the court." Id. at 6. The plaintiff states that she is bringing a claim under 28 U.S.C. §1983[1] for false arrest and false imprisonment by unlawful detention. Id. Under "relief wanted," the plaintiff states that she is seeking money damages to compensate her for "emotional distress, mental anguish, humiliation, physical injury, a loss of [her] child, loss of time, [her] mugshot publicly disseminated causing severe reputational harm and loss of professional opportunities, stress, and anxiety." Id. at 7.

The defendant answered the complaint, dkt. no. 23, and the court calendared a scheduling conference, dkt. no. 24. After the October 10, 2025 scheduling conference, the court issued a scheduling order setting a fact discovery deadline of June 5, 2026 and a dispositive motion deadline of November 13, 2026. Dkt. No. 34.

## II. Defendant's Motion to Compel (Dkt. No. 37) and Plaintiff's Motion for Protective Order (Dkt. No. 41)

### A. Parties' Arguments

On March 3, 2026, the defendant filed a motion asking the court to compel the plaintiff to produce documents. Dkt. No. 37. The defendant states that on January 15, 2026, he sent interrogatories, requests for production of documents and requests for admission to the plaintiff, requesting in relevant part that the plaintiff provide information and documents related to medical treatment she received for her alleged damages. Id. at 1-2. The defendant states that the plaintiff refused to respond, citing her right to privacy and

---

[1] Presumably the plaintiff is referring to *42* U.S.C. §1983, the civil rights statute that allows a plaintiff to sue state actors who violated her constitutional rights under color of state law.

claiming that the records were irrelevant to her claims. Id. at 2. The defendant asserts that the plaintiff has yet to produce several other documents she said she would produce with her discovery responses. Id. at 2-3. The defendant states that he contacted the plaintiff several times in February 2026 to schedule a telephone call to discuss her discovery responses, but that the plaintiff refused. Id. at 3.

The defendant argues that the plaintiff must produce documents related to her medical treatment because they are relevant to her damages. Id. at 3-4. He asserts that the plaintiff claims that she suffered "emotional distress, mental anguish, humiliation, physical injury" and a miscarriage because of the defendant's actions. Id. The defendant argues that the plaintiff's medical records are relevant to investigating those claims. Id. at 4.

The plaintiff responds that her medical records are not relevant to the case. Dkt. No. 39 at 1. She asserts that the court "has not permitted claims relating to miscarriage or pregnancy-related injuries" and that her medical records have no relevance to whether her arrest or imprisonment was lawful. Id. The plaintiff argues that her medical records contain highly personal and sensitive medical information and that disclosing them would be an unnecessary invasion of her privacy. Id. The plaintiff states that she "is not asserting a medical claim related to miscarriage" and argues that her emotional distress damages "arise from the alleged false arrest, imprisonment, and the burden of defending against criminal charges for approximately three and a half years before being found not guilty." Id. at 2. The plaintiff contends that she timely responded in writing to the defendant's discovery requests and says that there is no rule requiring her to meet with the defendant to discuss her responses. Id.

Ten days after the court received her response to the defendant's motion to compel, the court received from the plaintiff a separate request for a protective order. Dkt. No. 41. This motion primarily restates the arguments from her brief in opposition to the defendant's motion to compel—namely, that the medical records the defense has requested are not relevant to the claims in the case. Id. at 1–2. The plaintiff asserts that the defendant's discovery requests "appear[] designed to harass Plaintiff and delay the proceedings, which constitutes improper discovery abuse." Id. at 2. The plaintiff argues that the court should issue a protective order prohibiting the disclosure of her miscarriage and related medical records as "irrelevant, private, and unduly burdensome." Id. at 2–3.

The defendant responds that the court should deny the plaintiff's request for a protective order because she did not confer with the defendant prior to filing her request. Dkt. No. 42 at 1. He argues that he attempted to speak to the plaintiff about her discovery responses prior to filing the motion to compel, but that the plaintiff refused and has not contacted the defendant about the request for protective order. Id. at 1–2. The defendant asserts that his discovery requests are not meant to harass or burden the plaintiff and are merely designed to discover information related to the plaintiff's emotional distress damages. Id. at 2.

B.     Analysis

Federal Rule of Civil Procedure 26 allows "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Rule 37 allows a party to move to compel discovery if the opposing party fails to respond or provides incomplete responses. Fed. R. Civ. P. 37(a)(2)–(3). After the moving

5

party establishes relevance of the requested information, the burden shifts to the objecting party to show why a particular discovery request is improper. Kodish v. Oakbrook Terrace Fire Prot. Dist., 235 F.R.D. 447, 450 (N.D. Ill. 2006).

The medical records the defendant is seeking are both relevant and discoverable. In the amended complaint, the plaintiff alleges that she is seeking damages for "emotional distress, mental anguish, humiliation, *physical injury, a loss of [her] child,* loss of time, [her] mugshot publicly disseminated causing severe reputational harm and loss of professional opportunities, stress, and anxiety." Dkt. No. 22 at 7 (emphasis added). The plaintiff alleges that these are consequences she suffered because of the purported false arrest and false imprisonment. The defendant is entitled to discover information about treatment the plaintiff received for the emotional and physical distress allegedly caused by her false imprisonment.

The plaintiff argues that these records are privileged. But this case arises under federal law. The federal common law of privileges does not recognize a general physician-patient or hospital-patient privilege. Northwestern Mem'l Hosp. v. Ashcroft, 362 F.3d 923, 926 (7th Cir. 2004). That means that the plaintiff's medical records pertaining to her miscarriage and physical state after the events at issue in the case are not privileged. See Awalt v. Marketti, 287 F.R.D. 409, 423–24 (N.D. Ill. 2012) (no privilege prevented discovery of plaintiff's treatment for physical abuse, which was relevant to the plaintiff's claim of damages for loss of consortium and severe emotional distress). The plaintiff must produce medical records related to physical treatment for the injuries she alleges she suffered because of the defendant's conduct. Because the plaintiff specifically includes "loss of [her] child" as a harm she seeks to

recover damages for, she must produce medical records related to that miscarriage.

The defendant's requests for production also encompass mental health treatment records. Unlike in the physician-patient context, there *is* a federally recognized psychotherapist-patient privilege which applies to statements made for the purpose of obtaining psychiatric treatment from licensed psychiatrists, psychotherapists, social workers and similar individuals. See United States v. Schwensow, 151 F.3d 650, 654 (7th Cir. 1998). But that privilege is not absolute and can be waived. "If a plaintiff by seeking damages for emotional distress places his or her psychological state in issue, the defendant is entitled to discover any records of that state." Doe v. Oberweis Dairy, 456 F.3d 704, 718 (7th Cir. 2006) (citing Schoffstall v. Henderson, 223 F.3d 818, 823 (8th Cir. 2000)).

The court must evaluate the kind of emotional distress the plaintiff claims to determine if she has waived the privilege. See Awalt, 287 F.R.D. at 417–18 (collecting cases). Courts in this circuit generally rule that "the privilege may be waived where the plaintiff seeks to put into evidence psychological treatment in support of their claim for damages, but it is not waived where the plaintiff does not seek damages for emotional distress by introducing evidence that is not specific, concrete, or for which they received counseling as a result." Id. at 418. The privilege is not waived if the plaintiff seeks only "garden variety" emotional damages—"damages limited to the typical negative emotional impact on the plaintiff that obviously flow from the defendant's alleged misconduct." Id. (collecting cases). This type of "garden variety" emotional distress includes the "humiliation, embarrassment, and other similar emotions" a plaintiff may experience as a result of a defendant's conduct, but excludes "any resulting

7

symptoms or conditions that [the plaintiff] might have suffered," including "sleeplessness, nervousness, [and] depression." <u>Flowers v. Owens</u>, 274 F.R.D. 218, 220 (N.D. Ill. 2011) (citations omitted).

It isn't clear from the amended complaint or the plaintiff's briefing whether she is seeking garden-variety emotional distress damages or is seeking to introduce evidence of more severe symptoms. Regardless, the psychotherapist-patient privilege does not extend to the dates of treatment or the identity of the treating psychotherapist. <u>Avina v. Bohlen</u>, Case No. 13-C-1433, 2015 WL 1756774, at *2 (E.D. Wis. Apr. 16, 2015) (citing <u>Santelli v. Electro–Motive</u>, 188 F.R.D. 306, 310 (N.D. Ill. 1999)). The defendant's Interrogatory No. 22 asks the plaintiff to "[i]dentify and provide the name, address, and contact information for any physician, therapist, counselor, or mental health provider form which you sought or received any treatment, as a result of the alleged actions/violations of [the defendant], which forms the basis of this lawsuit." The psychotherapist-patient privilege does not relieve the plaintiff of the obligation to disclose this information. But because it is not clear whether the plaintiff is seeking more than garden-variety emotional distress damages, the court will not order the plaintiff to produce any of her privileged mental health records at this time. The court will require the parties to meet and confer (talk on the phone or in person) to discuss the extent of emotional distress damages the plaintiff seeks and whether mental health treatment records are necessary. If the plaintiff seeks only garden-variety emotional distress damages, she must explain that fact to the court, in writing. The parties may seek further assistance from the court to resolve this issue if necessary.

8

The court will grant the defendant's motion to compel and deny the plaintiff's motion for protective order. By the date the court sets below, the plaintiff must produce her general medical records related to treatment she received for her miscarriage and physical injuries she sustained because of the incident; she must identify any medical or mental health providers she received treatment from as stated in defendant's Interrogatory No. 22; and she must produce all supporting documents she stated she would produce in her discovery responses, including the recording identified in her response to Interrogatory No. 13, the fifteen items identified in her response to Interrogatory No. 15 and the notebook entry identified in her response to Interrogatory No. 17. She must provide these documents directly to the defendant's counsel; the plaintiff must *not* submit them to the court or file them on the public docket. Failure to provide these documents to the defendant by the court's deadline may result in the court imposing sanctions for noncompliance.

The court may seal the plaintiff's medical records and limit their use at trial "to the extent that the plaintiff's interest in privacy outweighs the probative value of the information contained in the records." Doe, 456 F.3d at 718. Any party who files the plaintiff's medical records on the public docket also may file a motion to seal those documents so the court may determine whether the records should be sealed or restricted from public view.

### III. Plaintiff's Motion to Quash Subpoena (Dkt. No. 44)

#### A. Parties' Arguments

On March 31, 2026, the plaintiff filed a motion to quash a subpoena the defendant issued to the Milwaukee County District Attorney's Office, arguing that the subpoena "is overbroad, seeks privileged communications, is

duplicative, and imposes an undue burden." Dkt. No. 44 at 1. The plaintiff asserts that the defendant's subpoena seeks "any and all" records related to the plaintiff's underlying criminal case. Id. She contends that this request is overbroad because it includes post-arrest information and communications which were unknown to the defendant at the time of the arrest. Id. at 2. The plaintiff argues that the subpoena encompasses "communications with any attorney representing Plaintiff," which she says would violate attorney-client privilege. Id. The plaintiff argues that she already has received the relevant police reports and 911 recordings, so the defendant's request for the same information a second time is unreasonably cumulative and duplicative. Id. She also argues that she was acquitted of all charges in the criminal case, so the post-arrest information is of little relevance. Id. The plaintiff requests asks the court to quash the subpoena or limit the request to non-privileged materials directly relevant to the defendant's probable cause determination. Id. at 2–3.

The defendant responds that the plaintiff lacks standing to oppose a subpoena to a third party. Dkt. No. 45 at 3. He argues that even if the plaintiff had standing, the request does not violate the attorney-client privilege because the subpoena seeks communications between the Milwaukee County District Attorney's Office and any attorney representing the plaintiff, not communications between the plaintiff and her attorney. Id. The defendant contends that the District Attorney's Office is likely to have documents and recordings it obtained during the prosecution that the Milwaukee Police Department no longer possesses due to the amount of time that has passed since the 2016 arrest. Id. The defendant argues that the acquittal does not change whether the information obtained during the prosecution is relevant to the arrest. Id. He contends that this information is not duplicative of what he

already possesses, and the subpoena is seeking to confirm that there are no other relevant documents or recordings available. Id. at 3–4. Further, the defendant states that the District Attorney's Office has not objected to the subpoena. Id. at 4.

B.     Analysis

Federal Rule of Civil Procedure 45 provides that the court may quash or modify a subpoena that "(i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A). "The law is clear that generally, a party does not have standing to quash a subpoena [directed] to a non-party. Instead, it is usually up to the non-party to bring its own motion to quash." Parker v. Four Seasons Hotels, Ltd., 291 F.R.D. 181, 187 (N.D. Ill. 2013). "However, a party may challenge a subpoena to a non-party where the party has 'a personal right or privilege with respect to the subject matter requested in the subpoena.'" ExeGi Pharma LLC v. Brookfield Pharms. LLC, Case No. 20-CV-192, 2022 WL 20690784, at *3 (E.D. Wis. May 5, 2022) (quoting Design Basics LLC v. Campbellsport Bldg. Supply, Inc., Case No. 13-C-560, 2014 WL 5818756, at *2 (E.D. Wis. Nov. 10, 2014)). This allows a party to challenge a subpoena that seeks information that constitutes "work product or attorney-client privilege, interfere[s] with business relationships, or [requires] production of private information about the party." Parker, 291 F.R.D at 187. "Relevance, burden or service objections fall to the subpoena's recipient to make." Id.

The plaintiff's primary arguments—that the subpoena is overbroad and seeks irrelevant information—are arguments that the plaintiff does not have

standing to make. Only the District Attorney's Office, as the target of the subpoena, may raise relevance or undue burden objections. Although the plaintiff may object to the subpoena based on the attorney-client privilege, the subpoena does not seek information that violates the attorney-client privilege. The subpoena requests that the District Attorney's Office produce "[a]ny and all communications with any attorney representing [the plaintiff] in the matter relative to Milwaukee County Case No. 16-CF-003074." Dkt. No. 46-1 at 4. This request is asking for communications between the *District Attorney's Office* and the plaintiff's attorney. Communications between a prosecutor and defense counsel are not subject to the attorney-client privilege. Because the subpoena does not seek privileged information and the plaintiff lacks standing to raise any other objections, the court will deny her motion to quash the subpoena.

## IV.    Defendant's Motion to Extend Discovery Deadlines (Dkt. No. 48)

During the pendency of these discovery motions, the defendant filed a motion asking the court to extend the remaining deadlines in the scheduling order. Dkt. No. 48. The defendant explains that an extension is necessary because it will take several months to receive and review the plaintiff's medical records and then take the plaintiff's deposition. Id. at ¶5. The plaintiff did not timely respond to the motion.

The fact discovery deadline currently is set for June 5, 2026. The court finds that the defendant has shown good cause to extend that deadline and the remaining deadlines in the scheduling order so that both parties have enough time to complete fact discovery. The court will grant the defendant's motion and extend the deadlines in the scheduling order to the dates the defendant requested.

12

## V. Conclusion

The court **GRANTS** the defendant's motion to compel. Dkt. No. 37

The court **DENIES** the plaintiff's motion for a protective order. Dkt. No. 41.

The court **ORDERS** that by the end of the day on **July 1, 2026**, the plaintiff must produce her general medical records related to treatment she received for her miscarriage and physical injuries she sustained because of the incident; must identify any medical or mental health providers she received treatment from as stated in defendant's Interrogatory No. 22; and must produce all supporting documents she stated she would produce in her discovery responses, including the recording identified in her response to Interrogatory No. 13, the fifteen items identified in her response to Interrogatory No. 15 and the notebook entry identified in her response to Interrogatory No. 17. These documents must be provided directly to the defendant's counsel; the plaintiff should not submit them to the court or file them on the public docket. Failure to produce these documents by day's end on July 1, 2026 may result in the court imposing sanctions on the plaintiff for noncompliance. The court **ORDERS** that by the end of the day on July 8, 2026 the defendant must inform the court whether the plaintiff has produced all the requested discovery.

The court **DENIES** the plaintiff's motion to quash the defendant's subpoena to the Milwaukee County District Attorney's Office. Dkt. No. 44.

The court **GRANTS** the defendant's motion to extend the discovery and dispositive motion deadlines. Dkt. No. 48. The court **ORDERS** that all fact discovery must be completed by **August 31, 2026**; the plaintiff's expert disclosures must be made by **September 28, 2026**; the defendant's expert

13

disclosures must be made by **October 26, 2026**; and dispositive motions must be filed by **December 7, 2026**.

Dated in Milwaukee, Wisconsin this 1st day of June, 2026.

**BY THE COURT:**

_____

**HON. PAMELA PEPPER
United States District Judge**

14